UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 22-40896-CJP |
| KEVIN TAING, | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

## ORDER PARTIALLY DETERMINING OBJECTIONS TO CONFIRMATION AND ENTERING CERTAIN RELATED RELIEF

Subchapter V debtor Kevin Taing (the "Debtor") seeks confirmation of the *Debtor's Second Amended Chapter 11 Plan of Reorganization Dated July 31, 2023 with Disclosures Pursuant to 11 U.S.C. § 1190* [ECF No. 115] (the "Plan"), as modified [ECF No. 161] (the "Modified Plan"). U.S. Bank Trust, National Association, not in its individual capacity but solely as owner trustee for VRMTG Asset Trust (the "Trust"), and U.S. Bank, National Association, Successor Trustee to Bank of America, N.A. as Successor to LaSalle Bank, N.A. as Trustee, for Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-H1 (the "Bank"), each filed objections to confirmation of the Plan, respectively, at ECF No. 120 ("Trust Objection") and ECF No. 135 ("Bank Objection," together with the Trust Objection, the "Objections").[1] The Debtor responded to the Objections. Resp. to Trust Obj. [ECF No. 122]; Resp. to Bank Obj. [ECF No. 159].

At a combined hearing on (i) confirmation of the Plan, (ii) the motions for relief from the

---

[1] The Commissioner of the Massachusetts Department of Revenue also filed an objection to confirmation of the Plan [ECF No. 145] ("MDOR Objection"). The Debtor filed the Modified Plan on the eve of the hearing on confirmation, alleging that the Modified Plan contained certain non-material modifications satisfying the issues raised in the MDOR Objection. Parties have not had an opportunity to formally address the non-material nature of the modifications and all objections to the Modified Plan that do not otherwise overlap with issues addressed by this Order are reserved.

automatic stay filed by the Bank [ECF No. 89] as to property located at 30-32 Saratoga Street, Lowell, MA (the "Saratoga Street Property) and the Trust [ECF No. 95], by its servicer NewRez LLC d/b/a Shellpoint Mortgage Servicing, as to property located at 121 Bellevue Street, Lowell, MA (the "Bellevue Street Property") (together, the "Motions for Relief") and (iii) the Bank's Motion to Show Cause [ECF No. 154] (the "Show Cause Motion"), the Court, by agreement of the Debtor, the Trust, and the Bank (the "Parties"), directed further briefing on certain threshold issues related to confirmation discussed at the hearing as to whether: 1) the Trust and the Bank have claims that can be treated through a plan in the Debtor's bankruptcy proceeding where the Debtor is not, and has never been, personally liable for debt secured by property that is now owned or partially owned by the Debtor (the "Privity of Contract Dispute"), and 2) with respect to the Bank, the Plan may cram down the Bank's claim where the Debtor only possesses an alleged partial ownership interest in the property that is subject to the Bank's mortgage (the "Cramdown Dispute").

The Privity of Contract and Cramdown Disputes are also central to the Show Cause Motion, pursuant to which the Bank asks for an order directing the Debtor to show cause why the Saratoga Street Property and the Bank's claim should be "included in the Debtor's bankruptcy estate." Show Cause Mot. at 1.  Similar to arguments made in its objection to confirmation, the Bank asserts in the Show Cause Motion that the Debtor cannot restructure a debt with respect to which he is a stranger to the loan documents and raises an issue as to the Debtor's ownership of the Saratoga Street Property because, at the time of the Bank's Show Cause Motion, the registry of deeds did not reflect Debtor's title to the property. *See id.* at 3–4.

The Trust and the Bank filed further briefing [ECF Nos. 171 and 172, respectively] (the "Briefing"), and the Debtor filed a supplemental statement in support of confirmation [ECF No.

2

173] that largely reiterates the arguments from his responses to the Objections. Upon consideration of the Plan, Objections, Responses, Briefing, supplemental statement, argument of counsel at the hearing, and the record of this case, the Objections are hereby overruled in part with respect to the Privity of Contract Dispute and the Bank Objection is sustained in part as to the Cramdown Dispute. The Court reserves on any remaining component of the Objections, including whether the Debtor filed the Plan in good faith pursuant 11 U.S.C. § 1129(a)(3).[2] This ruling is a limited to the narrow issue of what constitutes a "claim" that may be restructured by a plan of reorganization in a Chapter 11 case. While it may be difficult to foresee that the Debtor, who appears to have had no relationship to the properties at issue at the time when loans were made by lenders with which the Debtor was not in privity, could meet his burden to demonstrate good faith in seeking confirmation of a plan that restructures that debt, the Debtor is entitled to put on evidence of good faith at a confirmation hearing.

A. The Trust's and the Bank's Claims

The Trust and Bank are both mortgagees on properties that the Debtor seeks to restructure in his Plan. The Debtor purports to have acquired ownership interests in the properties subject to both mortgages but is not an obligor on either mortgage or the debt secured by either mortgage.[3] Plan § 2.3. The Trust and Bank argue the Plan cannot be confirmed because it treats their mortgages and collateral when the Debtor lacks privity to the mortgages. Trust Obj. at 3–4; Bank Obj. at 4. The objecting parties assert that because the Debtor is not an obligor on the underlying mortgages and notes, the Debtor is not liable to the Trust and Bank for

---

[2] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code").

[3] Both the Trust and Bank also object to confirmation citing bad faith. Trust Obj. at 6; Bank Obj. at 4. At this time, the Court does not address how the Debtor purportedly obtained possession of the Properties. Further evidentiary hearings may be necessary to determine these facts as they relate to Debtor's good faith in proposing the Plan.

3

any "debt," thus no "claim" can be treated. In contrast, the Debtor argues the Supreme Court's decision in *Johnson v. Home State Bank* is controlling as to what constitutes a "claim" within the meaning of § 101(5) that is subject to inclusion in a plan of reorganization. *See* 501 U.S. 78, 80 (1991) (examining whether a mortgage lien in a Chapter 13 reorganization plan can be restructured once the personal obligation secured by the mortgaged property has been discharged in a Chapter 7 proceeding and holding "that the mortgage lien in such a circumstance remains a 'claim' against the debtor that can be rescheduled under Chapter 13"). The Debtor asks this Court to join "the overwhelming majority of courts" that have applied *Johnson* and hold that the Trust and Bank have claims that may be treated in the Plan. ECF No. 173 at 2; *see* Resp. to Trust Obj. at 3; Resp. to Bank Obj. at 4.

The Bankruptcy Code defines a "claim" as a "right to payment" or a "right to an equitable remedy," 11 U.S.C. § 101(5), and a "'claim against a debtor' includes claim against property of the debtor," *id* at § 102(2). The Supreme Court in *Johnson* held that a "right to payment" includes a "right to the proceeds from the sale of the debtor's property," even where the debtor is not liable on the underlying mortgage. 501 U.S. at 84; *see also Ford v. Skorich (In re Skorich)*, 482 F.3d 21, 26 (1st Cir. 2007) ("As its legislative history makes plain, section 102(2) does nothing more than clarify that *claims to money* payable out of the debtor's property are to be treated no differently than claims to money enforceable against the debtor personally." (emphasis in original)). In *Johnson*, because the objecting bank creditor's right to proceed against the "Chapter 20" debtor's property *in rem* in connection with its non-recourse loan survived the discharge of debtor's personal liability in a previous Chapter 7 case, the bank still retained its claim. *Johnson*, 501 U.S. at 80, 84. The Supreme Court concluded that "[a]lternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a

'right to an equitable remedy' for the debtor's default on the underlying obligation." *Id.* at 84. Considering the wide range of other provisions that protect creditors from debtors who, for example, "file[] serially," as well as "Congress' intent that 'claim' be construed broadly," the Supreme Court specifically discouraged bankruptcy courts from "us[ing] the Code's definition of 'claim' to police the Chapter 13 process for abuse." *Id.* at 88. In other words, the creditor in *Johnson* could have objected to confirmation on different grounds, including good faith. *Id.* at 87 (objecting bank creditor's claim argument "fails to apprehend the significance of the full range of Code provisions" including whether "'the plan has been proposed in good faith'" (quoting 11 U.S.C. § 1325(a)(3))).

"The majority of courts apply the Supreme Court's broad interpretation of 'claim' in *Johnson* [] to permit confirmation of Chapter 13 plans that cure arrears where there are only *in rem* rights and no contractual privity between the debtor and creditor." *In re Stevenson*, No. 23-32811-KRH, 2023 WL 7401456, at *1 (Bankr. E.D. Va. Nov. 8, 2023) (concluding that secured creditor's *in rem* claim against property inherited by the debtor was a "claim" for purposes of § 101(5) and could be cured through the plan and collecting cases); *see also, e.g., In re Mack*, No. 22-02503-DD, 2023 WL 1869211, at *4 (Bankr. D.S.C. Feb. 9, 2023) (allowing debtor to cure a default on a mortgage granted by her mother, who had died intestate); *In re McNeal*, No. 3:11-BK-3148-PMG, 2011 WL 4381725, at *3 (Bankr. M.D. Fla. Sept. 1, 2011) (determining that, notwithstanding that the debtor is not personally obligated on the note and mortgage, "[s]ince the Debtor has an ownership interest in the property, he may cure the arrearage on the Mortgage, reinstate the Mortgage, and make regular payments on the Mortgage through his Chapter 13 Plan."); *Newcomer v. Litton Loan Servicing, L.P. (In re Newcomer)*, 438 B.R. 527, 542 n.14 (Bankr. D. Md. 2010) ("[T]he majority view since [Johnson] is that it is appropriate to permit a

5

Chapter 13 debtor who is the owner of real property to cure a pre-petition default under a mortgage, even if the debtor lacks privity with the mortgagee.") (quotation omitted); *Bank of America, N.A. v. Garcia (In re Garcia)*, 276 B.R. 627, 633 (Bankr. D. Ariz. 2002) (concluding that "the alleged lack of a debtor-creditor relationship between the Bank and the [purchasing] [d]ebtors has no bearing on the [d]ebtors' rights under § 1322"); *In re Hutcherson*, 186 B.R. 546, 551 (Bankr. N.D. Ga. 1995) (applying *Johnson* to find that mortgagee had a claim against debtor's estate where debtor acquired a quarter interest in the property by inheritance but was not in privity with mortgagee); *In re Lyrek*, No. 94-11572-12, 1994 WL 16005187, at *4 (Bankr. W.D. Wis. Oct. 31, 1994) (concluding that pre-*Johnson* cases cited by mortgagee had been abrogated by the Supreme Court in *Johnson* and determining that "[t]he fact that the debtors have no personal liability to the bank, or that the bank did not voluntarily initiate its current relationship with the debtors, is irrelevant. A bankruptcy plan may restructure a claim where there is no personal liability no matter what circumstances surround that lack of personal liability."). A minority of courts, however, have ruled that a debtor may not utilize Bankruptcy Code provisions to treat a debt where the debtor is not personally liable on that debt. *See, e.g., Pescrillo v. HSBC Bank USA, N.A.*, 2015 WL 417659, *2 (W.D.N.Y. Jan. 30, 2015) (in affirming stay relief order, concluding that "a debtor has no right to restructure mortgages in bankruptcy when the debtor is not in privity with the mortgagee" and distinguishing *Johnson* on that basis); *In re Tewell*, 355 B.R. 674, 681 (Bankr. N.D. Ill. 2006) (debtor who obtained residential property from original mortgagor in violation of due-on-sale clause in mortgage could not cure mortgage default under § 1322(b)(2) over objection of mortgagee); *Ulster Savings Bank v. Kizelnik (In re Kizelnik)*, 190 B.R. 171, 179 (Bankr. S.D.N.Y. 1995) ("This Court believes that *Johnson* should be limited to its peculiar facts and should therefore only govern the resolution of

6

'Chapter 20' cases involving a single mortgagor whose Chapter 13 bankruptcy is preceded by one under Chapter 7"); *In re Threats*, 159 B.R. 241, 242–43 (Bankr. N.D. Ill. 1993) (finding that secured creditor had claim but determining creditor's rights pursuant mortgage could not be modified because of due-on-sale clause and property was debtor's primary residence (citing *Johnson*, 501 U.S. 78–79)).[4]

Courts have also extended the *Johnson* holding to the context of Chapter 11 and have allowed for restructuring of secured claims even where debtors lack privity with the secured creditor. *See, e.g., In re Olympia Off. LLC*, 574 B.R. 38, 48 (Bankr. E.D.N.Y. 2017); *In re Thompson*, 454 B.R. at 491 (concluding that, under *Johnson* and its progeny, a Chapter 11 debtor may restructure a "claim" on property he owns that is not his principal residence, even though there is a lack of contractual privity); *In re KM Allied of Nampa, LLC*, No. 10-03056, 2011 WL 1434915, at *2–4 (Bankr. D. Idaho Apr. 14, 2011); *In re Foxcroft Square Co.*, 184 B.R. 671, 676–77 (E.D. Pa. 1995); *In re 680 Fifth Ave. Assocs.*, 156 B.R. 726, 735 (Bankr. S.D.N.Y. 1993).

For the minority of courts that have departed from *Johnson*, it is worth noting that their

---

[4] Here, both the mortgages of the Trust and the Bank contain due-on-sale clauses. Without citing to caselaw, the Trust objects to confirmation based on bad faith because the Debtor acquired its mortgaged property in violation of the due-on-sale clause in the mortgage. Trust Obj. at 4–6. While this Court reserves its determination on bad faith, this case is distinguishable from *In re Tewell* and *In re Threats* because the courts in those cases applied the anti-modification prohibition under § 1322(b)(2) in the context of principal residences being transferred in violation of due-on-sale clauses, whereas in this case the Debtor is treating claims on properties that are not his principal residence. Therefore, the exception to modification of home mortgages contained in § 1123(b)(5), which is identical to the exception to modification under § 1322(b)(2), does not apply. *See In re Thompson*, 454 B.R. 486, 491 (Bankr. D. Idaho 2011) (acknowledging that language in § 1322(b)(2) was identical to that of § 1123(b)(2) and distinguishing *Threats* in an individual Chapter 11 because the modification of a principal residence was not at issue). Further, as similarly highlighted by the court in the *In re Thompson* case, "no authority [has been provided] to support the proposition that a debtor may not modify the rights of a creditor, contractual or otherwise, whose claim is secured by real property that is not the debtor's principal residence where the loan documents contain a due-on-sale clause. Indeed, § 1123(b)(5), subject to § 1129(b)(2), allows for the fair and equitable modification of such rights in the [C]hapter 11 context." *Id.* at 493. The due-on-sale clauses could present a potential additional hurdle to confirmation if the Plan sought reinstatement and cure of the mortgages. *See* Arthur J. Margulies, *The Cure and Reinstatement of Mortgages by Third Party Assignees*, 24 Cardozo L. Rev. 449, 488 n.201 (2002).

7

concerns in the Chapter 13 context that a mortgagee should not be forced to be in a credit relationship with a debtor that has received property without the mortgagee's consent, is not a party to the loan agreement, and against whom the mortgagee does not have an *in personam* claim, are somewhat mitigated in the Chapter 11 context by the protections of § 1111(b). *In re Olympia Off. LLC*, 574 B.R. at 48 (observing that "Chapter 11 of the Bankruptcy Code provides protections for secured creditors who do not have recourse against the debtor, which apparently is not available under [C]hapter 13" and describing the effect of making an election under § 1111(b) to required that nonrecourse secured creditors who are undersecured be treated in Chapter 11 as if they had recourse (citing to *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 439, n.6 (1999)). "Alternatively, the creditor may elect 'to have the claim bifurcated into secured and unsecured portions.'" *Id.* (quoting *In re 680 Fifth Ave. Assoc.*, 29 F.3d 95, 96 (2d Cir. 1994) (holding absence of contractual privity between the lienholder and the debtor does not deprive the lienholder of the benefits and protections of § 1111(b)). Moreover, even in cases that "depart" from *Johnson*, courts have either determined no claim existed in lieu of deciding on good faith to avoid absurd results where debtors have acted in a manner antithetical to the Bankruptcy Code, *see In re Kizelnik*, 190 B.R. at 178, 184 (dismissing the case and entering an order akin to an *in rem* stay relief order after concluding that tenant-granddaughter of owner, who herself did not have an ownership interest in a mortgaged property that was the subject of a fourth scheduled foreclosure sale on the eve of her bankruptcy filing, and who was otherwise ineligible for Chapter 13 relief, did not have the right to de-accelerate and cure mortgagors' long-defaulted mortgage or invoke the automatic stay),[5] or

---

[5] *See also In re Curinton*, 300 B.R. 78, 86 (Bankr. M.D. Fla. 2003) ("*Kizelnik* is an example of an instance where the court should exercise its discretion to deny confirmation due to bad faith. When a debtor endeavors to utilize a bankruptcy case to delay the legitimate efforts of creditors and the debtor lacks intent or ability to actually pay the debt, the debtor is acting in bad faith and the debtor's plan should not be confirmed.").

8

determined a claim exists but that the secured claim cannot be modified due to another provision in the Code, *see In re Tewell*, 355 B.R. at 681 (discussing impermissible modification of home mortgage under § 1322 (b)(2)), *In re Threats*, 159 B.R. at 242–43 (discussing modification under 11 U.S.C. § 1322(b)(2) in a case decided prior to the 1994 amendments to the Bankruptcy Code).[6] Denying confirmation on the basis that the Debtor is not liable on the note secured by property of the estate without considering other applicable Code provisions would seem to conflict with the Supreme Court's instruction not to use the definition of claim to "police the [bankruptcy] process for abuse." *See Johnson*, 501 U.S. at 88; *see also In re SNIIIC Two, LLC*, No. 6:13-BK-14308, 2015 WL 13882745, at *2 (Bankr. M.D. Fla. Nov. 16, 2015) (quoting *Johnson*, 501 U.S. at 88).

While the Trust and the Bank cite to caselaw that might inform a decision on the Debtor's good faith in proposing the plan, the factual distinctions that are raised appear to be of the type that the Supreme Court squarely eschewed in analyzing the narrow, gating issue of whether a claim exists and those cases do not persuade this Court that the objecting parties do not have "claims" that may be treated in a plan. Although the Debtor is not personally liable to the Trust and the Bank, they have a right to proceed against Debtor's property *in rem*. Therefore, this Court will apply the reasoning of what constitutes a "claim" in *Johnson* and overrule the Objections in relation to the Privity of Contract Dispute on these grounds.

---

[6] *See In re Batista-Sanechez*, 493 B.R. 521, 526–27 (Bankr. N.D. Ill. 2013) (distinguishing facts involving investment property from *In re Threats*). The Trust cites to *United Enters., Ltd. v. ACI Sunbow, LLC (In re ACI Sunbow, LLC)*, 206 B.R. 213 (Bankr. S.D. Cal. 1997) in its Briefing. ECF No. 172 at 2–3. In that case, which examined good faith in the context of determining a motion for relief from stay, the court stated: "Congress did not intend to extend to business adventurers *who are strangers to the debt* the use of Chapter 11 to coerce agreements from secured creditors . . . ." 206 B.R. at 225 (emphasis added). The court, however, did not reference *Johnson*, "expresse[d] no opinion" about "whether the debtor might be able to reorganize through use of the cramdown power of § 1129(b)," and held that the debtor filed in bad faith in granting stay relief. *Id.* While *In re ACI Sunbow, LLC* may inform a decision on Debtor's lack of good faith, it does not expressly "deviate" from *Johnson* with respect to whether the Objecting Creditors have claims that the Debtor may treat in the Plan. ECF No. 172 at 3.

B. <u>Debtor's Partial Ownership Interest in the Property Securing the Bank's Claim and the Proposed Cramdown</u>[7]

The Bank also objects to confirmation of the Plan on the basis that "Debtor has not shown a colorable claim to ownership of the Property." Bank Obj. at 4. The Bank possesses a mortgage on the Saratoga Street Property. Plan § 2.3. The original mortgagors on the Saratoga Street Property are Houth Song and Samantha Heang, f/k/a Synath Men.[8] In response to the Bank's Objection and Show Cause Motion and as reflected in the changes made in § 2.3 of the Modified Plan, the Debtor asserts a 50% ownership interest in the Saratoga Street Property.[9] The Debtor contends that he obtained Heang's interest in the Saratoga Street Property as a tenant in common "by virtue of a deed dated in or around July 2018." Resp. to Bank Obj. ¶¶ 2 and 14. Because he lost the original deed, Heang executed and the Debtor recorded a confirmatory quitclaim deed on January 3, 2024, the date on which the Debtor filed his Response to the Bank Objection, that "replaces" the lost deed and "confirms that Kevin Taing has been an owner of the property referenced herein since [on or about July 24, 2018]." *Id.* at Ex. 1. Accepting the validity of this quitclaim deed for the purposes of this Order only, the Debtor now asserts he possesses a one-half interest in the Saratoga Street Property as a tenant in common, and Song retains the remaining one-half interest.

The Bank filed a secured claim for $572,636.75 with a fixed annual interest rate of

---

[7] The Trust has made a § 1111(b) election and does not have the same partial ownership and cramdown confirmation concerns as the Bank. As previously mentioned, all other components of both the Trust and the Bank's Objections not otherwise addressed and resolved by this Order are reserved.

[8] Bank Obj., Exs. A, B. Neither Song nor Heang have appeared in the case and are not expressly identified in the Plan. Additionally, although the Debtor added Heang to his list of creditors and schedules, it appears that Song has not received any notice of these proceedings and is not listed in the schedules. *Motion to Amend Matrix* [ECF No. 35]; *Schedules A/B – J* [ECF No. 27].

[9] The Debtor's schedules reflect that the Debtor, alone, owns the Saratoga Street Property. Schedules A/B [ECF No. 27].

10

7.723%. The proof of claim indicates prepetition arrears total $366,898.03 and an attachment shows defaults on regular payments dating back to 2013. The Plan values the Saratoga Street Property at $430,000.00, Plan § 2.3, which the Bank disputes, Bank Obj. ¶ 8. The Plan proposes to cramdown the Bank's claim. The pre-existing loan of the Bank on the Saratoga Street Property would be cancelled "as to the Debtor's interest" and replaced with a first mortgage and note amortized over forty years at 6.5%, extending the maturity date by approximately twenty-seven years. Modified Plan § 6.2. The Debtor would be "personally liable on" the note in consideration for the Bank "waiv[ing] any resulting Deficiency Claim." *Id.* In exchange for "full and complete satisfaction, settlement, release and discharge" of its claim, the Bank would receive an allowed secured claim of $430,000.00. *Id.* The Debtor contemplates collecting rental income from three properties, including the Saratoga Street Property, to fund the Plan. Plan §§ 2.1, 2.3, 2.4, 2.6, 7.1.

The Modified Plan addresses for the first time the existence of a co-owner, Song, and the co-owner's interest in the Saratoga Street Property. The Modified Plan explains that Song has "abandoned the property and has not asserted any claim to the property since that time." Modified Plan § 2.3. The Debtor also expects to be the "sole owner" of the Saratoga Property as of the Effective Date of the Plan, *id.*, and "is in the process of locating [] Song and obtaining a deed from him," Resp. to Obj. Bank ¶ 1. If the Debtor "remains a co-tenant," the Bank would retain its pre-petition lien on Song's interest but would be "enjoined from exercising its rights under that lien unless" the Debtor defaults on the replacement obligations provided for in the Plan. Plan § 6.2. The Plan appears to contemplate that, in the event the Debtor is still a co-tenant at the Effective Date, the Bank would retain the pre-existing mortgage against Song.

A debtor may modify the rights of secured claimants in a Chapter 11 plan. *See* 11 U.S.C.

11

§ 1123(b)(5). A debtor's modification of a mortgage underlying his undivided interest in property comports with Massachusetts law. *See Altobelli v. Montesi*, 15 N.E.2d 463, 465 (Mass. 1938) ("One tenant in common may bind his own interest in the common property by mortgage[.]"); *Brady v. City Council of Gloucester*, 797 N.E.2d 479, 482–83 (Mass. App. Ct. 2003) ("[E]ach [tenant in common] has an undivided fractional interest and the right to possession and use of the entire property."). However, "the equitable powers of the bankruptcy court do not . . . 'authorize [it] to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties." *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 5 (1st Cir. 2004) (quoting *In re Ludlow Hosp. Soc'y, Inc.*, 124 F.3d 22, 27 (1st Cir. 1997)). Other bankruptcy courts have denied confirmation of plans that propose to modify the rights of non-debtor co-owners. *See, e.g., In re Geneva ANHX IV LLC*, 496 B.R. 888, 902 (Bankr. C.D. Ill. 2013) (debtors could not "eliminate or alter the rights of the [unwilling] non-debtor [tenant in common] owners" through substantive consolidation and, thus, plan was not feasible); *see also In re PEM Thistle Landing Tic 23, LLC*, No. 13-13273, 2014 WL 1319183, at *2–*3 (Bankr. D. Del. Apr. 2, 2014) (dismissing case for cause where debtor, as a tenant-in-common that owned 0.97% interest in commercial real estate, cannot force the non-debtor tenants-in-common to restructure the security interest requiring a cramdown under a plan because "it cannot bind or do the bidding of the non-debtor [ [tenants in common]" under state law and the creditor has made clear it would reject a cramdown under the plan and "it is not legally possible" to reorganize the debt to the creditor of the order non-debtor tenants in common).

In the context of Chapter 13, courts have allowed debtors to modify secured liens pursuant to §§ 1322(b)(2) and 1325(a)(5)(B) when the debtor possesses a partial interest in the

12

property, so long as the secured creditor's rights against the non-debtor co-owner are not affected. *See, e.g.*, *In re Buttel*, No. 22-40542, 2023 WL 3588162, at *5 (Bankr. D. Kan. May 18, 2023) (finding plan provision releasing secured creditor's lien upon discharge "reaches only to the Debtor's interest" but "§ 1322 and cramdown conditions of § 1325 do not authorize plan modification of Creditor's rights against Co-debtor or the Co-debtor's interest"); *In re Flournoy*, 570 B.R. 293, 300 (Bankr. E.D. Wis. 2017) (allowing debtor to eliminate lien on vehicle upon discharge and "leaving intact [creditor]'s lien on [tenant-in-common, non-debtor]'s interest"); *In re Jackson*, No. 12-10757, 2012 WL 6623497 (Bankr. M.D. Ga. Dec. 18, 2012) (permitting debtor to release lien on vehicle as to debtor's one-half interest but ordering plan be amended so that lien would not be released as to non-debtor's interest). Some courts have ruled in Chapter 13 cases where a co-owner has attempted to strip a lien encumbering property jointly owned with a non-debtor co-owner that "that both co-owners of [tenancy-by-the-entirety] property must be joint debtors and each must be eligible to receive a Chapter 13 discharge before either can strip a lien." *In re Pierre*, 468 B.R. 419, 428 (Bankr. M.D. Fla. 2012) (collecting and discussing cases).

In this case, in the event the Debtor is still only a partial owner of the Saratoga Street Property by the Effective Date, it appears U.S. Bank would retain two separate mortgages on the property: the Plan's replacement mortgage against the Debtor's interest and the pre-existing mortgage against Song's interest. Subject to meeting confirmation requirements such as good faith, as a tenant-in-common, the Debtor could theoretically modify the claim secured by his interest through a plan but cannot impact the Bank's rights against the non-debtor co-owner or the co-owner's interest. *See Johnson*, 501 U.S. 78; *Altobelli*, 15 N.E.2d at 465; 11 U.S.C. § 1123(b)(5); *see also In re Flournoy*, 570 B.R. at 298 (discussing 11 U.S.C. § 1322(b)(2)). The Modified Plan, as proposed, would modify at least some of the rights of the Bank with respect to

13

its pre-existing mortgage with Song.  First, it expressly enjoins the Bank from foreclosing on Song's undivided one-half interest, including based on his current default on the mortgage, unless the Debtor also defaults on the replacement mortgage obligations.  The Modified Plan does not address whether the Bank would have immediate recourse to collect on its defaulted promissory note directly from Song or whether Song would be liable for a deficiency so I will assume the Modified Plan does not affect those rights and remedies.  Plan injunctions affecting the rights and remedies of creditors as to non-debtor third parties are granted only in extraordinary circumstances and with consent.  *See Harrington v. Purdue Pharma L. P.,* 144 S. Ct. 2071, 2088 (2024) (determining "that bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants); *see also In re Grove Instruments, Inc.*, 573 B.R. 307, 313–15 (Bankr. D. Mass. 2017) (collecting cases and discussing standard in First Circuit prior to Supreme Court determination in *Purdue Pharma*). On the record of this case, this Court would not enter an order confirming the Modified Plan if the Debtor is only a partial owner of the Saratoga Street Property, where the Modified Plan provides a separate mortgage securing the Debtor's plan obligations and calls for an injunction that would limit the Bank's rights and remedies with respect to the mortgage covering the interest of the co-owner, Song.  While the Debtor represents that he is attempting to obtain a transfer from Song, that has not happened.

    For the reasons above, I partially overrule the Objections of the Bank and the Trust only as to the Privity of Contract Dispute and partially sustain the Objection of the Bank relating to Cramdown Dispute as to the treatment of its claim with respect to the Saratoga Street Property.

    The Debtor shall file an amended Plan within 21 days.  To be clear, I have made no

determination regarding the Debtor's good faith, ownership of an interest in the Saratoga Street Property, or any other component of the confirmation Objections made to the Plan or that may have been made to the purported non-material modifications set out in the Modified Plan other than as expressly stated herein. The remaining components of the Objections that have not been reached by this Order may be asserted, as may be appropriate, regarding the amended plan that will be filed in response to this Order.

The Court, in considering the response to the Show Cause Motion, denies the motion as moot and the evidentiary disputes regarding ownership of the Saratoga Street Property are reserved and should be raised in the context of the Bank's objection to confirmation of the amended plan that will be filed as a result of this Order. The Court will enter further orders on the Motions for Relief.

By the Court,

Dated: August 12, 2024

_____
Christopher J. Panos
United States Bankruptcy Judge